IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HALBERT T.[1],

            Plaintiff,

     v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

            Defendant.

Case No. 3:21-cv-500-SI

**OPINION AND ORDER**

Ari D. Halpern, HALPERN LAW GROUP PC, 62910 OB Riley Road, Suite 100, Bend, OR 97703. Of Attorneys for Plaintiff.

Scott Erik Asphaug, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Alexis L. Toma, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Halbert T. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying his application for Disability Insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court affirms the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on December 4, 2018, alleging disability beginning on June 28, 2018. AR 136. Plaintiff's date of birth is June 12, 1983, and he was 35 years old as of the alleged

PAGE 2 – OPINION AND ORDER

disability onset date. AR 137. The agency denied his claim both initially and upon

reconsideration, and Plaintiff requested a hearing. AR 168, 178, 181. Plaintiff appeared for a

hearing before an ALJ in October 2020. AR 29. The ALJ issued a decision denying Plaintiff's

claim for benefits. AR 10-21. Plaintiff requested review of the ALJ's decision, which the

Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the

agency and Plaintiff seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

As a preliminary step for Plaintiff's claim, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2019. AR 12. The ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2018. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of posttraumatic stress disorder (PTSD) and depressive disorder. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform: "a full range of work at all exertional levels but with the following nonexertional limitations. He can perform simple, routine tasks that can be learned in 30 days or less. He can tolerate cursory, incidental contact with coworkers and the general public. He cannot participate in team-based work activity." AR 14. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform his past relevant work. AR 19. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including laundry worker, cleaner, and lab equipment cleaner. AR 20. The ALJ thus concluded that Plaintiff was not disabled. AR 21.

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to give effect to the Veterans Affairs' (VA) finding of disability, discounting his symptom testimony, discounting the medical opinion of Dennis Rogers, and discounting the lay witness testimony of Tanya Rawls and Tia Wallace. The Court addresses each alleged error in turn.

### A.  VA Finding of Disability

Plaintiff argues the ALJ erred by failing to discuss the VA's finding that Plaintiff was 100 percent disabled. For claims filed after March 27, 2017, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether" the claimant is "disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. These new regulations overrule the Ninth Circuit's requirement under the old regulations that an ALJ give weight to a VA's determination of disability. *See Underhill v. Berryhill*, 685 F. App'x 522, 524 n.1 (9th Cir. 2017) (Ikuta, J., dissenting) (noting that the new regulations "will overrule *McCartey*'s requirement that 'an ALJ must ordinarily give great weight to a VA determination of disability' or provide 'persuasive, specific, valid reasons for [giving less weight] that are supported by the record'" (alteration in original) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002))); *Dubord v. Comm'r of Soc. Sec.*, 2021 WL 2661879, at *3 (E.D. Cal. June 29, 2021) ("The new regulation appears to remove any requirement for an ALJ to discuss another agency's rating."); *cf Woods v. Kijakazi*, --- F. 4th ---, 2022 WL 1195334, at *4 (9th Cir. Apr. 22, 2022) ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations."). The Commissioner will, however, "consider all of the supporting

evidence underlying the other governmental agency or nongovernmental entity's decision" that the claimant puts into the record. 20 C.F.R. § 404.1504.

Because Plaintiff filed his claim for benefits after March 27, 2017, the new regulations apply. The ALJ therefore was not obligated to discuss the VA's finding of disability. Plaintiff maintains, however, that even under the new regulations, the ALJ was required to discuss the medical opinions before the VA. Specifically, Plaintiff contends that the ALJ erred by failing to discuss the medical opinion of Dr. Mark Ward. Even if the ALJ erred in failing address Dr. Ward's opinion, any error was harmless because the ALJ incorporated Dr. Ward's opinion as to Plaintiff's limitations into Plaintiff's RFC. Dr. Ward diagnosed Plaintiff with PTSD and opined that his symptoms include sleep impairment, mild memory loss, disturbances in motivation and mood, and difficulty in adapting to stressful circumstances. AR 370. The ALJ found that Plaintiff had a severe impairment of PTSD and included nonexertional limitations of "simple, routine tasks"; "cursory, incidental contact with coworkers and the general public"; and no "team-based work activity." AR 14. Dr. Ward's opinion does not offer limitations greater than already incorporated in Plaintiff's RFC. Further, Dr. Ward completed his evaluation of Plaintiff on August 13, 2015, which is nearly three years before Plaintiff's alleged onset date and therefore renders Dr. Ward's opinion of limited relevance. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."); *Gregory E. H. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 843393, at *8 (D. Or. Mar. 22, 2022) ("Thus, any medical opinions predating the alleged onset of disability are not significantly probative and the ALJ need not explain why she rejected them."). The ALJ did not commit harmful error in failing to give effect to the VA's finding of disability or Dr. Ward's medical opinion.

### B.  Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not

show that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all of the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ rejected Plaintiff's symptom testimony due to his daily living activities, conflicting medical evidence, and a lack of supporting medical evidence. AR 16-18. The Court analyzes each reason below.

### 1.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ rejected Plaintiff's testimony in part because he "testified that he self-isolates and only exercises at home but he told Dr. Whitehead that he works out at a local gym." AR 17. Plaintiff's testimony, however, did not indicate that Plaintiff only exercised at home. At the hearing, Plaintiff testified that he does "most of [his] body workouts at home," but that if he "need[s] to lift some weights to build muscle," he goes to the gym. AR 92. That testimony does not conflict with his daily living activities included in Dr. Michelle Whitehead's report that Plaintiff's "works out at a local gym." AR 433. Plaintiff's occasional visits to the gym therefore do not conflict with his testimony.

The ALJ also noted that Plaintiff "is able to do self-care, sweep, vacuum, do laundry, make meals, and grocery shop." AR 17. The ALJ, however, does not explain how these activities conflict with Plaintiff's symptom testimony. Plaintiff largely testifies to difficulty getting along with others and that he is quick to anger. *See* AR 43-58. Plaintiff's ability to do household chores and brief errands such as grocery shopping does not conflict with that testimony. Thus, Plaintiff's activities of daily living was not a clear and convincing reason supported by substantial evidence to reject Plaintiff's testimony.

### 2. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ found that two of Mr. Rogers' treatment notes from Plaintiff's counseling sessions were inconsistent with Plaintiff's testimony. During one session, Mr. Rogers noted that Plaintiff appeared in "great spirits" and spoke of a romantic relationship he had just begun. AR 611. During another session, Mr. Rogers noted that Plaintiff "was emotionally regulated and demonstrated positive insights" while discussing the loss of his wife in a car accident. AR 612. That Plaintiff appeared in "great spirits" when speaking of a new romantic relationship and was able to remain emotionally stable during his counseling session does not conflict with Plaintiff's testimony that he is quick to anger and has difficulty interacting with others, especially at work. These purported inconsistencies are not supported by substantial evidence.

The ALJ's final reason for discounting Plaintiff's symptom testimony was a lack of supporting medical evidence. *See* AR 16-18. That reason alone, however, is insufficient to discount symptom testimony. *See Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."); *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). The ALJ therefore failed to give clear and convincing reason supported by substantial evidence to reject Plaintiff's testimony. The Court must determine whether that error was harmless.

### 3. Harmless Error

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115; *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability

PAGE 12 – OPINION AND ORDER

determination"). A court should not automatically reverse on account of error, but should make a

determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

"Determination of prejudice requires 'case-specific application of judgment, based upon

examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki*

*v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially

include, among others:

> an estimation of the likelihood that the result would have been
> different, an awareness of what body (jury, lower court,
> administrative agency) has the authority to reach that result, a
> consideration of the error's likely effects on the perceived fairness,
> integrity, or public reputation of judicial proceedings, and a
> hesitancy to generalize too broadly about particular kinds of errors
> when the specific factual circumstances in which the error arises
> may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it

affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural

rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the

circumstances of the case, that further administrative review is required to determine whether

there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere

probability of prejudice is not enough, but where there is a substantial likelihood of prejudice,

then remand is appropriate. *Id.*

Plaintiff argues that the Court should remand for immediate payment of benefits because

he testified that he has been fired for his angry outbursts at work in the past and the VE testified

that an individual who is unable to control anger will not be tolerated in the workplace. *See*

AR 68. The ALJ, however, incorporated Plaintiff's interpersonal limitations into his RFC even

though the ALJ discredited Plaintiff's symptom testimony. The ALJ limited Plaintiff to "simple,

routine tasks" with "cursory, incidental contact with coworkers and the general public" and no

participation in "team-based work activity." AR 14. Plaintiff did not testify, for example, that he

has angry outbursts at work even when his work requires minimal contact with others. The ALJ's

interpretation of the evidence is rational and must be upheld. *See Burch*, 400 F.3d at 679

("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld."). Thus, the ALJ's error in discounting Plaintiff's testimony was

harmless.

## C.  Mr. Rogers' Medical Opinion

Plaintiff filed his application for benefits on December 4, 2018. For claims filed on or

after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must

evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical

Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer

"weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R.

§ 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state

that the agency does not defer to any particular medical opinions, even those from treating

sources. *Id.*; *see also Woods*, --- F. 4th ---, 2022 WL 1195334, at *6. The new regulations also

eliminate the agency's "treating source rule," which gave special deference to certain opinions

from treating sources. Instead, the ALJ considers the "supportability" and "consistency" of the

opinions, followed by additional sub-factors,[2] in determining how persuasive the opinions are. 20

C.F.R. § 404.1520c(c). Supportability is determined by whether the opinion is supported by

relevant objective medical evidence, and the source's explanation for the opinion. 20 C.F.R.

---

[2] The secondary factors include relationship with claimant, specialization, and "[o]ther factors." 20 C.F.R. § 404.1520c(c).

§ 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with other medical opinions and prior administrative findings. 20 C.F.R. § 404.1520c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b)(2)-(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, --- F. 4th at ---, 2022 WL 1195334, at *6.

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's therapist, Mr. Rogers. In a check-box form, Mr. Rogers opined that Plaintiff's limitations precluded him from performing nearly every ability on the questionnaire for 20 to 30 percent of the workday. *See* AR 637-39. Mr. Rogers also opined that Plaintiff would be absent from work five days or more per week due to his PTSD. AR 640. As the Commissioner argues, Mr. Rogers' treatment notes conflict with and fail to support the severity of Plaintiff's limitations noted in Mr. Rogers' opinion. Mr. Rogers' treatment notes repeatedly state that Plaintiff demonstrated a normal mood and make no findings related to Plaintiff's limitations. *See* AR 555-635. That inconsistency is a specific reason supported by substantial evidence to discount Mr. Rogers' opinion. *See Bourcier v. Saul*, 856 F. App'x 687, 689 (9th Cir. 2021) (concluding that the ALJ properly rejected a medical opinion that conflicted with treatment notes indicating that the plaintiff "had intact cognitive functioning, and demonstrated cooperative behavior, good judgment and insight"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (concluding that

conflict between medical opinion and treatment notes was a specific and legitimate reason to

discount medical opinion). The ALJ found that the record did not support the severity of

limitations noted in Mr. Rogers' opinion. The ALJ's conclusion is supported by substantial

evidence in the record to discount Mr. Rogers' opinion.

## D.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness

testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053

(9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment

affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony

without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's

testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack

of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay

witness] observations. The fact that lay testimony and third-party function reports may offer a

different perspective than medical records alone is precisely why such evidence is valuable at a

hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing

cases and concluding: "A lack of support from medical records is not a germane reason to give

'little weight' to those observations.").

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony,

either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must

determine whether the error is "'inconsequential to the ultimate nondisability determination' in

the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The

error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff argues the ALJ erred by rejecting the testimony of Plaintiff's girlfriend, Ms. Rawls, and friend, Ms. Wallace. Ms. Rawls stated that Plaintiff generally stays home most days and plays video games, "has a hard time concentrating and completing tasks," "gets upset with others due to perceived threats," and has been fired in the past for verbal aggression. AR 302-09. Ms. Wallace stated that Plaintiff "has issues with groups of people," stays in bed most of the day, and has bad dreams. AR 271-78.

The Commissioner argues that Ms. Rawls and Ms. Wallace's testimony conflicts with the medical evidence. The ALJ, however, did not provide that reason for rejecting Ms. Rawls and Ms. Wallace's testimony, and the Court must disregard *post hoc* explanations. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). In any event, any error in discounting Ms. Rawls and Ms. Wallace's testimony is harmless because they testified to no greater limitation than Plaintiff, and, as discussed with respect to Plaintiff's testimony, the ALJ incorporated those limitations into Plaintiff's RFC. The ALJ therefore did not commit harmful error in rejecting the testimony of Ms. Rawls and Ms. Wallace.

### E.  Step Five Finding

Plaintiff argues that substantial evidence does not support the ALJ's step five finding because the RFC posed to the VE did not incorporate limitations included in Plaintiff's testimony, Mr. Rogers' opinion, and Ms. Rawls and Ms. Wallace's testimony. Because the Court has concluded that the ALJ committed no harmful error in rejecting those opinions and testimony, substantial evidence supports the ALJ's step five finding.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act.

**IT IS SO ORDERED**.

DATED this 16th day of May, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge